This is an action for goods sold and delivered to the defendant by Daniel O. Ketchum and Charles H. Cole, who were partners, under the firm of D.O. Ketchum Co. The answer, without denying the sale and delivery of the merchandise, denies any indebtedness for the same. It then proceeds to allege, as a separate defence, a contract between the defendant and D.O. Ketchum Co., for the sale and delivery of certain glassware in quantities and at periods specified in the contract; by which contract Ketchum 
Co., in the event of their failing to perform, were to forfeit to the defendant two hundred dollars. The answer goes on to aver that D.O. Ketchum failed to deliver the glassware mentioned in the instrument; that the defendant has been damaged by such failure to the extent of two hundred dollars; that D.O. Ketchum 
Co. have forfeited and become liable to pay to the defendant the two hundred dollars specified in their agreement, and the defendant claims to set off this amount against the plaintiff, who is the assignee of D.O. Ketchum Co., and asks to have the complaint dismissed.
It will be observed that the answer admits the sale and delivery to the defendant of the goods for which the action is brought, while it does not allege that they were delivered under the contract which it sets up. It is doubtful whether the principle and more important question discussed on the argument of this appeal is raised by such an answer, but as it was evidently considered at the trial before the referee in the court below, and is presented by his report, I will proceed to discuss it.
The referee states in his report that on the 15th day of March, 1854, the defendant, who was a manufacturer of liniment, made a contract in writing with D.O. Ketchum Co., *Page 219 
who were vendors of glassware, by which they agreed to deliver to him bottles of various sizes for his medicine, at prices which were specified in the contract, and he agreed to take the glassware. Either party failing to perform was to forfeit or to pay $200 to the other. The bottles were to be delivered during the months of April, May and June next ensuing, and the kinds and quantities of bottles to be delivered during each month are specified in the agreement. The agreement is silent as to the time and manner of payment, although it was proved at the trial, without objection, that there was to be a credit of six months. It was also proved that after all the deliveries which the vendors actually made in April, 1854, the defendant gave them his note at six months for an amount which included the price of similar articles which had been sold and delivered to him before this agreement was made, and also a part of the price of the articles delivered in April after the contract. This note was dated April 13th, 1854, and seems to have been subsequently paid, but the referee's report is silent in regard to it; nor is there evidence to show that there was any distinct understanding between the parties as to its precise consideration. On the 11th of April the referee finds that D.O. Ketchum Co. delivered to the defendant sixty-four gross of two-ounce bottles, eighteen gross of ten-ounce bottles, and sixty-two gross of five-ounce bottles. The contract calls for one hundred gross of two-ounce bottles, and twelve gross of ten-ounce bottles, to be furnished in the month of April, but there is nothing in it as to the purchase or sale at any time of any five-ounce bottles. The referee finds that all the bottles thus delivered were received and used by the defendant. After this, on the 14th day of April, 1854, the firm of D.O. Ketchum Co. was dissolved, and all the assets of the firm, including the contract with the defendant, and any and every claim against him were assigned to D.O. Ketchum. A short time after this D.O. Ketchum failed, and on the 10th of June, 1854, executed a general assignment for the benefit of his creditors to the plaintiff. No more bottles were delivered to the defendant after the 11th *Page 220 
of April, and the residue of the agreement was not fulfilled by the vendors.
The plaintiff's assignors have, therefore, failed to perform their contract, and assuming, as the referee has done, that all the articles delivered by them to the defendant, of the description specified and called for by the agreement, were delivered under and in performance of it, the question arises whether, upon such a part performance, payment can be recovered for the price or value of the articles thus delivered. The referee held that the defendant was liable to pay for the glass delivered after the making of the agreement, notwithstanding it was not delivered in pursuance of its terms. He did not, however, find or report that the defendant waived the performance of the contract, but only that he accepted and used the articles delivered. He also decided that the defendant's claim for damages for the non-delivery of the glass could not be set up under the pleadings and proof in this action against the plaintiff. To these decisions the defendant excepted.
It will be seen that sixty-two gross of five-ounce bottles were delivered by D.O. Ketchum Co. to the defendant on the 11th of April, which were not called for by the contract. The report of the referee states that these "were not at all within the contract," which may probably be fairly construed to mean that they were not delivered or received in pursuance of the contract, or as part of the deliveries under it. If this be so, and this finding is not objected to by either party, there can be no reason why the plaintiff should not recover the value of these articles, as upon a separate and distinct sale and delivery to the defendant. If there was such a distinct sale as the referee's finding seems to imply, the vendors' right to recover the price of the vendee, does not depend upon their rights or liabilities under the contract of the 10th of March, however the ultimate recovery might be affected or reduced by any counter-claim of the defendant for damages in consequence of a breach of that agreement. If I could find in this case any unequivocal proof of the price or value of the property included in this separate sale, I should have no difficulty *Page 221 
in sustaining a recovery against the defendant in this action to that extent. But the referee does not state this price or value, nor is there any evidence of it except in a bill produced at the trial, and stated to have been rendered to the defendant by the present plaintiff after the assignment to him.
The referee held that the plaintiff's recovery could not be mitigated or reduced by the loss or damage sustained by the defendant by the breach of the contract. Without discussing that question I will proceed to consider the case in a broader aspect, and to examine the main question, whether the plaintiff can recover for the price or value of the articles actually delivered by his assignor.
The referee decided that although there had been only a partial performance of the contract, yet the defendant was liable to pay for the articles delivered under it in such part performance, because they were accepted and used by him. He considered that the deliveries stipulated in the months of April, May and June were to be treated as separate contracts. Even if this were so, the vendors did not perform their contract in respect to the deliveries for the month of April, and the case, after all, stands upon a partial performance only. In Deming v. Kemp (4 Sand. S.C.R., 147), which is cited by the referee, the original contract was void by the Statute of Frauds, and each separate delivery was, therefore, regarded as a separate sale made upon an independent contract. The same feature exists in the case ofSeymour v. Davis, decided in the same court (2 Sand. S.C.R., 239).
In the present case there was a valid contract between D.O. Ketchum Co. and the defendant, for the sale and delivery of bottles of specified sizes during three months. The defendant, no doubt, made this contract with a view to the requirements of his business, and for the purpose of being supplied with the articles from time to time as he required them. The vendors failed to perform their part of this agreement and the court below held that the defendant was nevertheless bound to performance, that is payment on his part, because he did not return the articles which had been delivered to him. So *Page 222 
far as we have any evidence in the case, as to the time and mode of payment, it was not due until after all the deliveries had been made. The contract was entire, and called for an entire performance, and until such performance was made or tendered there was no liability on the part of the defendant. Even if each month's delivery is regarded as a separate contract, still the same principles apply and must control the rights of these parties. Even in that aspect of the case, as I have already said, there has been a breach of the contract by the vendor, and his claim for compensation rests upon mere partial performance. I am unable to see any distinction between such a case and that ofChampion v. Rowley, in the Court of Errors (18 Wend., 258). The idea of an equitable right of recovery in such cases, which was discountenanced by the Chancellor in his opinion there, has found no more favor in the courts of this state subsequently. InSmith v. Brady (17 N.Y., 173), the principles which control all this class of cases were elaborately considered in this court, and it would be a distinct departure from the doctrine of that case to sustain a recovery for the price of the articles delivered under this contract upon the facts before us in this case. The defendant was not bound to retain the articles delivered to him under the contract in the course of the month of April, or of any other month included within its limits, without using or disposing of them until the contract, or even the month, had expired, to ascertain whether the vendors would perform their agreement. He made his contract to obtain the articles which he was to buy for immediate and constant use, and no one could have demanded or expected that he would not use them as they were required in his business. But if he did not waive the performance of the contract he had a right to insist upon its performance as an entirety, and when the vendors, without cause or excuse, refused to perform it, he was not bound to return what he had received, nor could he be compelled to pay for a part performance. Such certainly is now the settled doctrine of the courts of this state. *Page 223 
The case of Shields v. Pettee (2 Sand. S.C., 262), which was cited by the referee in his opinion and on the argument, has no application to the present case. That was a sale of a certain amount of iron as an entirety, all deliverable at once. After the delivery had commenced the vendees found the article not to be such as they had agreed to buy, and they refused to receive any more. They did not, however, return what they had already received, but claimed to retain this, while they refused the residue and still claimed damages for the inferiority in quality of what they retained. The court held that the vendees must either affirm or rescind in toto, and that they could not retain a part of the iron sold them and at the same time refuse the residue, and claim damages for its non-delivery. The difference is as plain between this case and that, as it is between such a case and one where a vendee accepts an article with his eyes open and thus elects to consider it a performance of the contract, although it is different from what the vendor agreed to make it. If, in the case of the sale of the iron, the vendors, after delivering a part had unjustifiably refused to deliver the residue, and yet claimed to recover for what they had delivered, or if in the latter case supposed, the vendor had tendered an article which was not according to his contract, and sought to recover its price although the vendee refused to receive it, the cases would be more analogous to the present.
As I see no way of retaining the judgment for the articles sold and delivered independently of the contract, it must be reversed and a new trial ordered in the court below.
Judgment reversed, and new trial ordered. *Page 224